UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CLYDE LOCHIN,

      Plaintiff,

v.                               CASE NO.: 8:09-cv-1535-T-23TBM

VERIZON FLORIDA LLC, et al.,

      Defendants.

_____/

## ORDER

The plaintiff, Clyde Lochin, sues (Doc. 2) the defendants Verizon Florida LLC

("Verizon") and International Brotherhood of Electrical Workers, Local Union 824 (the

"Union"), under the Florida Civil Rights Act (the "FCRA"), Sections 760.01-.11, Florida

Statutes; the Florida Private Whistleblower's Act, Sections 448.101-.109, Florida

Statutes; and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et

seq.. Lochin alleges (1) that Verizon unlawfully terminated him based on his race and

(2) that the Union conspired with Verizon to discriminate against him. The defendants

remove (Doc. 1), and both Verizon and the Union move (Docs. 61, 64) for summary

judgment. Lochin responds (Docs. 94, 95) in opposition.

### Background

In 2005, Verizon hired Lochin to work as a "customer zone technician III" at a

Verizon facility located in Brandon, Florida (the "Brandon facility").[1] Lochin initially

worked under the supervision of local manager Joshua Cook but later worked for

---

[1] March 2, 2010, Deposition of Clyde Lochin ("Lochin Depo"), at 61-21, Ex. 7. A customer zone technician III or a "CZT III" is the lowest level technician and both a "CZT II" and a "CZT I" are higher level technicians.

Edward Wisham.[2]  Throughout his two years of employment, Lochin worked under several area managers,[3] including Kevin Koeberle, Kenny Soule, and Eric Morin.  In 2007, Wisham was Lochin's local manager and Morin was Lochin's area manager.[4]

Verizon provides most technicians a van equipped with a global positioning system ("GPS").[5]  Verizon uses the GPS to compile a "SABIT" or productivity report that compares the technician's GPS location with the "job tickets selected by the technician, his start and end time, and his lunch break . . . ."[6]  Verizon reviews a technician's SABIT report "as frequently as possible."[7]  When Lochin began as an employee, Verizon assigned Lochin a GPS-equipped van.  After Lochin's van ceased functioning, Lochin received another van.  Eventually, Lochin had no assigned van but became responsible for obtaining an available van at the beginning of his 7:30 a.m. to 4 p.m. shift.  On certain days, Lochin "was the only one left in the yard looking for a van" and "had to ride with somebody else."  The Verizon vans often became unusable and were "pretty raggedy."[8]

---

[2] Lochin Depo. at 62-63, 123.

[3] An area manager supervises a local manager, and a local manager supervises a group of technicians.

[4] Lochin Depo. at 63.

[5] Declaration of Lisa Cobb ("Cobb Declaration") (Doc. 80); Lochin Depo. at 222.

[6] Cobb Declaration.

[7] May 20, 2010, Deposition of Eric Morin ("Morin Depo."), at 23.

[8] Lochin Depo. at 90, 111, 116-124.

At the beginning of each day, the Union conducted a "circle meeting" with the technicians at the Brandon facility.[9]  Lochin attempted to attend a meeting when he began working for Verizon, but the participants in the meeting (including John Glye, a union steward) communicated to Lochin that he "d[id]n't belong there."  Lochin believed (1) that the Union excluded him from meetings because Lochin performed his job and "maybe even [went] above and beyond what other people do as far as production and things of that nature"[10] and (2) that his exclusion from the meetings rendered him "an outcast" and "not in the Verizon in-crowd."[11]  A technician generally receives by seniority opportunities to earn overtime wages, but a technician also receives overtime wages for an assignment that continues beyond the end of the technician's shift.[12]

On July 16, 2007, Wisham (Lochin's local manager) initiated an investigation of Lochin because, while reviewing "daily SABIT reports" of the technicians whom Wisham supervised, Wisham "saw a pattern of a particular address" in Lochin's report.  Upon further investigation, Wisham discovered that the address was Lochin's residence.[13]  Wisham notified Morin, Lochin's area manager, of both the irregularity in Lochin's report and an irregularity in another technician's report.[14]  Morin directed Wisham to request

---

[9] Lochin Depo. at 94-95.

[10] May 19, 2010, Deposition of Clyde Lochin ("Lochin Depo. II"), at 10-13.

[11] Lochin Depo. at 95-97.

[12] Lochin Depo. at 111-113.

[13] June 1, 2010, Deposition of Edward Wisham ("Wisham Depo"), at 78, 82.

[14] Morin Depo. at 27-31.  The other technician, Tobin Tole, failed at the end of his shift to return his Verizon truck to the Brandon facility and arrived at work the following morning apparently "under the influence of something."  Verizon never investigated Tole because, after requiring that Tole submit to a drug test, Verizon terminated Tole's employment for failing the drug test.

Lochin's SABIT report for the previous week to "see if this is a habit."[15]  Lochin's SABIT

report for July 10-13, 2007, and July 16-19, 2007, revealed that, over the course of eight

days, Lochin spent 33.73 hours at his residence during the work day and charged

approximately twenty-seven hours of overtime.[16]  During the investigation, Wisham also

observed Lochin's vehicle parked outside of Lochin's residence rather than the assigned

job location.[17]

Morin instructed Wisham to contact Verizon's human resources department and

to convene an investigatory meeting with Lochin and union representatives.[18]  On July

23, 2007, Wisham and Joe Torch (a Verizon area manager) convened the meeting with

Lochin and two Union representatives, John Glye and Alan Brown.[19]  Verizon apprised

neither Glye nor Brown of the facts underlying the investigation before the meeting.[20]

The Union's role was to "ensure [that] the contract [wa]s not violated."[21]  During the

meeting, Lochin could not recall spending time at his residence during the work day.[22]

---

[15] Morin Depo. at 21.

[16] Morin Depo. at 26; Wisham Depo. Exs. 1-7 (Docs. 78-1, 78-2, 78-3, 78-4, 78-5, 78-6); Cobb Declaration (Doc. 80); Wisham Declaration (Doc. 85).

[17] Wisham Depo. at 107.  Declaration of Sam Torch, Doc. 84.

[18] Morin Depo. at 33; Wisham Depo. at 76-77.

[19] Doc. 78-6;

[20] Wisham Depo. at 94; June 2, 2010, Deposition of Alan Brown ("Brown Depo"), at 59-61; June 2, 2010, Deposition of John Glye ("Glye Depo. II"), at 71.

[21] Brown Depo. at 58-59; Glye Depo. II, at 18.

[22] Glye Depo. II at 21; Wisham Declaration; Docs. 78-1-78-6.  Lochin deposed that he neither shopped nor rode with Frederick White, a local manager also under investigation for misconduct.  Lochin Depo. II at 244-267.

Glye requested a brief recess to discuss with Lochin the gravity of the situation and the significance of the evidence of misconduct.[23]

After the meeting, Brown advised Lochin to discontinue his association with other, unnamed persons also suspected of misconduct.  Although Brown identified no particular person, Lochin concluded that Brown meant (1) two other African-American employees under investigation for misconduct and (2) "any other African-American."[24] Shortly after the investigatory meeting, Wisham reviewed the evidence with Joe Lombrana, a director of "customer operations" responsible for meeting with management, including members of labor relations, and reviewing potential employee discipline.[25]  Upon (1) reviewing both the notes from the investigatory meeting and the SABIT reports and (2) evaluating the standard imposed by the collective bargaining agreement, Lombrana:

> had an open discussion with members of the management team, including Edward Wisham and Eric Morin, relative to allegations that . . . Lochin . . . had violated company work rules by going home throughout the workday and had charged Verizon for this nonproductive time, including charges for overtime . . . [and had] created an inaccurate and false time record in violation of Verizon's Code of Conduct.

Based on the information presented, Lombrana concluded that the evidence of misconduct satisfied the "just cause" standard for termination under the collective bargaining agreement.  On August 9, 2007, Verizon terminated Lochin's employment and stated that the termination derived from Lochin's falsifying company records in

---

[23] Glye Depo. II at 29-31.

[24] Lochin Depo. II at 297-305.

[25] Declaration of Joe Lombrana ("Lombrana Declaration"), Doc. 82.

violation of Verizon's Code of Conduct.[26]  On August 10, 2007, the Union filed a

grievance on Lochin's behalf, which grievance challenged Lochin's termination and

reserved the right to arbitrate.[27]  Lochin declined to participate in the grievance

process.[28]  This action ensued.

    In this action, Lochin alleges that Verizon and the Union conspired to terminate

him based on his race.[29]  Lochin bases his allegation on (1) Lochin's belief that neither

Glye nor Brown represented Lochin's interests "in accord[] with the duties of their

positions, including not investigating the accuracy of the allegations against [Lochin]"[30]

and (2) a conversation that Frederick White, a local manager also under investigation

for misconduct, overheard between Koeberle and Glye in the "general office" at the

Brandon facility.[31]  Specifically, White told Lochin that White overheard Koeberle

directing Glye to "bring me somebody."  Glye responded by stating that "[e]very time I

bring you someone, you let them off the hook."  Koeberle and Glye also discussed a

technician who "was brought forth for being out of route" and who Koeberle failed to

discipline or terminate.[32]  White heard no more of the conversation, because Koeberle

and Glye exited the general office.

---

[26] Lombrana Declaration; Declaration of Candace Caldwell, Doc. 79.

[27] Glye Depo. II at 33-34, 121-22; Lochin Depo. Ex. 6 (Doc. 65-2).

[28] Lochin Depo. at 106.

[29] Doc. 2.

[30] Lochin Depo. at 71-73.

[31] Lochin Depo. II at 296-97.

[32] March 4, 2010, Deposition of Frederick White, at 207-10, Doc.109-1.  However, White heard only part of the conversation, which consists of Koeberle's directive that Glye "bring [him] somebody."

<u>Discussion</u>

*1. Disparate Treatment Under Title VII & the FCRA*

An employee's establishing a prima facie case of discrimination under Title VII creates a rebuttable presumption that the employer acted illegally.  <u>Wilson v. B/E Aerospace, Inc.</u>,  376 F.3d 1079, 1087 (11th Cir. 2004).[33]  Absent direct evidence of discrimination, an employee establishes a prima facie case by showing (1) that the employee belonged to a protected class, (2) that the employer subjected the employee to an adverse employment action, and (3) that the employer treated the employee differently from a similarly situated, non-minority.  376 F.3d at 1087 (citing <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973)); <u>Holifield v. Reno</u>, 115 F.3d 1555, 1562 (11th Cir. 1997).  If the employer articulates a legitimate, non-discriminatory basis for the action, "the burden of production shifts to the plaintiff to offer evidence that the alleged reason of the employer is a pretext for illegal discrimination."  However, "[t]he employer 'need not persuade the court that it was actually motivated by the proffered reasons,'" 376 F.3d at 1087 (quoting <u>Texas Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 254-55 (1981)), and "'[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'"  <u>Silvera</u>, 244 F.3d at 1258 (quoting <u>Burdine</u>, 450 U.S. at 253)).

a. Lochin Fails to Establish A Prima Facie Case

In this action, the parties agree that Lochin belongs to a protected class and that Lochin's termination constitutes an "adverse employment action."  However, the parties

─────────────────

[33] An FCRA claim receives the same construction as a Title VII claim.  <u>Jones v. United Space Alliance, L.L.C.</u>, 494 F.3d 1306, 1310 (11th Cir. 2007).

dispute whether Verizon treated a similarly situated, non-African-American employee

differently from Lochin.  "To make a comparison of the plaintiff's treatment to that of

non-minority employees, the plaintiff must show that he and the employees are similarly

situated in all relevant respects."  Holifield, 115 F.3d at 1562.  Accordingly:

> [I]n cases involving alleged racial bias in the application of discipline
> for violation of work rules, the plaintiff, in addition to being a member
> of a protected class, must show either (a) that he did not violate the
> work rule[] or (b) that he engaged in misconduct similar to that of a
> person outside the protected class, and that the disciplinary
> measures enforced against him were more severe than those
> enforced against the other persons who engaged in similar
> misconduct.

Jones v. Gerwens, 874 F.2d 1534, 1540 (11th Cir.1989); Holifield, 115 F.3d at 1562

(finding that "it is necessary to consider whether the employees are involved in or

accused of the same or similar conduct and are disciplined in different ways."); see

Silvera v. Orange County Sch. Bd., 244 F.3d 1253, 1259 (11th Cir. 2001) (Carnes, J.)

("In order to satisfy the similar offenses prong, the comparator's misconduct must be

nearly identical to the plaintiff's in order 'to prevent courts from second-guessing

employers' reasonable decisions and confusing apples with oranges.'") (quoting

Maniccia v. Brown, 171 F.3d 1364, 1368-69 (11th Cir. 1999)).

Therefore, an employee generally qualifies as similarly situated if the employee

(1) answered to the same supervisor, (2) worked under the same standards of conduct,

and (3) engaged in "the same conduct without such differentiating or mitigating

circumstances that would distinguish the[] [employee's] conduct or the employer's

treatment of the[] [employee]" as a result of the conduct.  Sanguinetti v. United Parcel

Serv., Inc., 114 F. Supp. 2d 1313, 1317 (S.D. Fla. 2000) (citing Mitchell v. Toledo Hosp.,

964 F.2d 577, 583 (6th Cir. 1992) and Patterson v. Wal-Mart Stores, Inc., 1999 WL

1427751, *8 (M.D. Fla. 1999)); <u>Jones v. Gerwens</u>, 874 F.2d 1534, 1541 (11th Cir. 1989)

(finding that "disciplinary measures undertaken by different supervisors may not be

comparable for purposes of Title VII analysis."). "'Different employment decisions,

concerning different employees, made by different supervisors, are seldom sufficiently

comparable to establish a prima facie case of discrimination for the simple reason that

different supervisors may exercise their discretion differently.'" <u>Sanguinetti</u>, 114 F. Supp.

2d at 1317 (quoting <u>Radue v. Kimberly Clark Corp.</u>, 219 F.3d 612, 618-19 (7th Cir.

2000)).  The failure to show a similarly situated employee warrants summary judgment

on a disparate treatment claim.  <u>Holifield</u>, 115 F.3d at 1562.

In this action, Lochin identifies nine potential comparators, consisting of Toby

Riddle, Ed Carlisle, John Sullivan, Ken Scott, Derek Laboy, Alan Brown, Bobby Bellot,

Tobin Tole, and Donnie Gill.  Eight of the comparators (Riddle, Carlisle, Sullivan, Scott,

Laboy, Brown, Tole, and Gill) worked under a different supervisor.  Verizon investigated

Riddle for "going out of route," but Riddle (who worked for Verizon for over thirty years)

decided to retire before Verizon could terminate his employment.  Carlisle, a CZT II,

(Lochin was a CZT III) became the subject of an investigation for "falsifying documents,

being out of route, [and] time reporting issues."  Because Carlisle was eligible for

retirement, Carlisle retired before Verizon could terminate his employment.  Sullivan,

also investigated for misconduct and possessing sufficient tenure, retired before

termination.[34]  Verizon investigated Scott for violating "home dispatch" rules and Laboy

for "questionable GPS results."[35]  Bellot engaged in a single instance of shopping during

---

[34] Glye Depo. at 69-72; Caldwell Declaration (Doc. 79).

[35] Doc. 94 (Plaintiff's response) at 10.

- 9 -

the work day.[36]  Brown received discipline as a result of both poor performance and

productivity and was investigated for "sexually harassing others."[37]  As noted earlier,[38]

Tole failed at the end of his shift to return his Verizon truck to the Brandon facility and

arrived at work the following morning apparently "under the influence of something."

Verizon never investigated Tole because, after requiring that Tole submit to a drug test,

Verizon terminated Tole's employment for failing the drug test.[39]  Verizon investigated

Gill for violating work rules as a result of Gill's caring for an elderly, sick uncle and Gill's

"flex[ing] some of his time to do so."[40]

Lochin presents no valid comparator because eight of the nine comparators

worked under a different supervisor, and each comparator's conduct presents a

different or mitigating feature.  No comparator engaged in the "same or similar" (much

less "nearly identical") conduct as Lochin.  See Silvera, 244 F.3d at 1259.  Accordingly,

Lochin fails to show that Verizon treated differently a similarly situated employee and

fails to establish a prima facie case for discrimination.

> b. Even if Lochin Established a Prima Facie Case, Lochin Shows
> No Evidence that His Termination Was a Pretext for Discrimination

Lochin concedes (Doc. 94) that Verizon possessed a legitimate, non-

discriminatory reason for terminating Lochin's employment.  However, Lochin argues for

an inference that Verizon's legitimate, non-discriminatory reason amounts to "merely a

---

[36] Doc. 94 at 9, Doc. 128 at 3.

[37] Brown Depo. at 102; Doc. 86-2 at 11.

[38] See supra note 14 and accompanying text.

[39] Morin Depo. at 27-31.

[40] Caldwell Declaration (Doc. 79).

pretext[] for racial discrimination against [Lochin]" based on circumstantial evidence of (1) an alleged physical assault against an African-American local manager; (2) alleged racial hostility at the Brandon facility and prevalent use of the term "boy"; (3) Verizon's failure to assign a van to Lochin; (4) the Union's informing Lochin that he was unwelcome at the "circle meeting"; (5) the temporal proximity of the conversation overheard by White and the termination of White's, Lochin's, and Kenneth Prince's employment; (6) the comparators cited by Lochin in attempting to establish a prima facie case; (7) the Equal Employment Opportunity Commission's right-to-sue letter; and (8) the defendant's conduct in disciplining other employees (neither of whom are technicians) for "stealing time."

An employer's non-discriminatory reason "cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false[] and that discrimination was the real reason." St. Mary's Honor Center v. Hicks, 509 U.S. 502, 515-16 (1993) (Scalia, J.); see also Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470-71 (11th Cir. 1999); Smith v. Papp Clinic, P.A., 808 F.2d 1449, 1452-53 (11th Cir. 1987). Lochin presents (1) no evidence supporting the falsity of the non-discriminatory reason and (2) insufficient evidence to support a reasonable inference that Verizon (through Wisham, Morin, and Lombrana) terminated Lochin's employment because of his race. Use of the term "boy" at the Brandon facility fails (without more) to show that Verizon's terminating Lochin derived from racial animus. In fact, the evidence shows that the employees at the Brandon facility used "boy" indiscriminately as a casual, neutral, and common

replacement for a person's name.[41]  Brown's telling Lochin not to associate with other employees (who Lochin assumed were two other African-American employees, White and Prince) also under investigation for misconduct provides no evidence of discriminatory motive.  Verizon's failure to provide Lochin a van (after the first two vans Verizon provided to Lochin broke down) fails to support Lochin's claim because, as Lochin recognized, the vans were "raggedy," in short supply, and often non-functioning. The Union's failure to welcome Lochin into the Union's "circle meeting" presents no evidence relevant Verizon's motive.

### 2. Retaliation

Lochin "concede[s] the claims for retaliation, even though[] [Lochin] has a good faith basis for asserting such claims."  (Doc. 94)

### 3. Civil Conspiracy

Counts twelve and thirteen of the complaint (Doc. 2) assert a claim based on an alleged civil conspiracy between the Union and Verizon.  Both the Union and Verizon argue for summary judgment (1) because Lochin bases his state law conspiracy claim on his statutory claim and "Florida recognizes no independent tort cause of action for racial discrimination or retaliation"; (2) because Lochin possesses neither personal

---

[41] Glye deposed (Doc. 106), in response to an inquiry as to the use of "boy" at the Brandon facility, that:

> I may look over at Mr. Prunn and say, "Hey boy, bring me that. Hey dude, get me that." It's just common chatter amongst the guys maybe, "Dude, boy, what's up?" It's not specific to any race or anything like that, someone saying boy. I've joked with Robert you know and said, "Hey boy, grab that for me. Give me that." You know, it's not specific to any one person. Anybody could do that. So I've heard employees talk like that.

Glye Depo. at 41.  Prince, an African-American technician, stated that his co-workers generally addressed a person as "boy" instead of using the person's name.  April 2, 2010, Deposition of Kenneth Prince ("Prince Depo"), at 159-62. Whether "boy" constitutes evidence of racial animus depends upon the context in which the term appears. Ash v. Tyson Foods, Inc., 546 U.S. 454, 456 (2006).

knowledge of an alleged agreement nor evidence of an alleged agreement between Verizon and the Union; and (3) because the evidence of a conspiracy, which evidence relies predominantly on the conversation that White overheard between Koeberle and Glye, provides insufficient evidence of a conspiracy.  In response, Lochin (1) cites[42] to a November, 9, 2009, order (Doc. 32) that denies the defendants' motions to dismiss the civil conspiracy claim and (2) provides as additional evidence of a conspiracy the participation of Glye and Brown in each of Lochin's and Prince's investigatory meetings (despite the availability of other union stewards), Lochin's and Prince's belief that Glye provided insufficient Union representation at the meetings, and Glye's and Brown's accepting as accurate the evidence of misconduct.

The November 9, 2009, order (Doc. 32) denying dismissal of Lochin's civil conspiracy claim establishes no fact and renders no finding relevant to Lochin's evidentiary burden on a motion for summary judgment.  Lochin must provide sufficient evidence to support his civil conspiracy claim, which Lochin fails to do.  No reasonable inference of intentional discrimination against Lochin could arise (without more) from the evidence of (1) White's overhearing Glye and Koeberle's conversation; (2) Glye's and Brown's participating in Lochin's and Prince's meetings with Verizon management; (3) Glye's and Brown's accepting as true the evidence against Lochin and Prince; (4) Brown's instructing Lochin not to associate with other employees under investigation for misconduct; and (5) the temporal proximity of Lochin's, White's, and Prince's terminations.  In fact, the evidence could just as easily support an inference that Lochin,

---

[42] (Docs. 94 and 95)

White, and Prince contemporaneously engaged in misconduct warranting discipline and termination.

## Conclusion

Accordingly, the defendants' motions (Docs. 61 and 64) for summary judgment are **GRANTED**.  The Clerk is directed to (1) enter judgment in favor of the defendants and against the plaintiff, (2) terminate any pending motion, and (3) close the case.

ORDERED in Tampa, Florida, on October 15, 2010.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE